**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 10, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

SEAN R. CONRAD,

      Plaintiff-Appellee,

v.

PHONE DIRECTORIES COMPANY,
INC., MARC BINGHAM, individually;
and MIKE BINGHAM, individually,

      Defendants-Appellants.

No. 07-6276

---

**Appeal from the United States District Court**
**for the Western District of Oklahoma**
**(D.C. No. 5:07-CV-00859-R)**

---

Ronald W. Taylor of Venable, LLP, Baltimore, Maryland (David E. Strecker, Jessica C. Ridenour, Strecker & Associates, P.C., Tulsa, Oklahoma on the brief), for Defendants-Appellants.

Scott F. Brockman (Stanley M. Ward, Woodrow K. Glass with him on the brief) of Ward & Glass, LLP, Norman, Oklahoma, for Plaintiff-Appellee.

---

Before **LUCERO, EBEL,** and **HARTZ,** Circuit Judges.

---

**EBEL**, Circuit Judge.

In this appeal we are asked to decide, for the first time in this circuit, whether we have jurisdiction over an interlocutory appeal of the denial of a motion to dismiss premised on the existence of an arbitration agreement, notwithstanding the fact that the defendants did not explicitly move to stay the litigation or compel arbitration under the Federal Arbitration Act ("FAA"). We hold that we do not. Based on the plain text of the FAA, our canons of construction of jurisdictional statutes, and the Supreme Court's recently-expressed categorical approach to the FAA's appellate jurisdiction provision, we hold that in order to properly invoke appellate jurisdiction under the Act, the movant must either explicitly move to stay litigation and/or compel arbitration pursuant to the Federal Arbitration Act, or it must be unmistakably clear from the four corners of the motion that the movant seeks relief provided for in the FAA. We thus dismiss this appeal for lack of jurisdiction and remand the case to the district court.

I.      Background

Plaintiff Sean Conrad sued his former employer, Phone Directories Co., and its chief executive and financial officers (defendants Marc and Mike Bingham, respectively; all three defendants will be collectively referred to as "PDC") on state-law tort and breach-of-contract claims. Subject-matter jurisdiction in the district court was premised on diversity of citizenship; Conrad is a citizen of Oklahoma and defendants are domiciled in Utah, and Conrad sought more than $75,000 in damages. See 28 U.S.C. § 1332(a). The gravamen of Conrad's suit, in essence, is that PDC violated an agreement to employ

him, as well as to provide him with five percent of the profits when the company was sold in 2007.

PDC argues, however, that Conrad signed a later employment agreement that included a clause requiring all disputes between PDC and Conrad to be submitted to arbitration. In response to Conrad's complaint, PDC filed a motion to dismiss under Federal Rule of Civil Procedure 12. PDC asserted three bases for dismissal: first, that the second employment agreement required Conrad to bring his claims in Utah, rather than Oklahoma, and thus that the suit should be dismissed for improper venue under Rule 12(b)(3); second, that the dispute resolution provisions of the second employment agreement required Conrad to arbitrate his claims, and thus that the court should dismiss those claims; and third, that Conrad's state-law claims were legally deficient for various reasons and should thus be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

While the arbitration agreement was an important part of PDC's motion to dismiss, the motion did not ask the court to enforce the agreement under the FAA. The portion of PDC's motion that addressed the agreement asserted only that "Plaintiff's Complaint should be dismissed . . . because Plaintiff agreed to arbitrate all claims relating to his employment with [PDC.]" (App. at 33.) Only once in its memorandum in support of the motion, at the outset of its arbitration argument, did PDC mention the possibility of any outcome other than outright dismissal. (Id. at 49 ("If the Court does not dismiss this matter for improper venue, the Court should issue an order compelling arbitration and

dismissing Plaintiff's claims.").)  PDC's motion did not, however, explicitly ask the district court to stay the proceeding pending arbitration or to compel arbitration under either § 3 or § 4 of the FAA.  See 9 U.S.C. § 3 (empowering district courts to stay litigation where an issue therein is subject to arbitration under a written agreement); 9 U.S.C. § 4 (authorizing district courts to compel arbitration under a valid agreement to arbitrate).  The only mention of either provision of the FAA came in a quotation in a parenthetical appended to the citation of a Third Circuit case at the end of PDC's arbitration agreement argument.

The district court granted PDC's motion with respect to some of Conrad's state-law tort claims, but denied the motion to dismiss the complaint in full under the arbitration agreement.  In the district court's view, "[a]t a minimum, genuine issues of material fact exist as to the applicability of [the second employment agreement] to the parties' relationship and [Conrad's] claims herein and as to the enforceability of [the second agreement,] assuming any applicability."  (App. at 142.)  PDC filed an immediate appeal of this denial, asserting that its appeal was "taken pursuant to 9 U.S.C. § 16(a)," the appellate jurisdiction provision of the FAA.

II.    Appellate Jurisdiction

Before addressing the merits of PDC's arguments, we must first assure ourselves that we possess jurisdiction over this appeal.  Though neither party initially briefed the question of our appellate jurisdiction, we ordered supplemental briefing on the issue of whether FAA § 16(a) grants us jurisdiction to review the district court's order.  See

-4-

Kennedy v. Lubar, 273 F.3d 1293, 1301 (10th Cir. 2001) (recognizing this court's ability to raise questions of appellate jurisdiction sua sponte).

Title 28, section 1291 of the United States Code grants Courts of Appeals jurisdiction over "all final decisions of the district courts of the United States." A final decision "is a decision by the district court that 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" Utah ex rel. Utah State Dept. of Health v. Kennecott Corp., 14 F.3d 1489, 1492 (10th Cir. 1994) (quoting Catlin v. United States, 324 U.S. 229, 233 (1945)). By its very nature, the decision to deny a motion to dismiss is not final; rather than ending the litigation, it is a decision that it will continue. See Hatten-Gonzales v. Hyde, 579 F.3d 1159, 1166 (10th Cir. 2009). Under normal circumstances, therefore, we would have no power to review the district court's decision to deny PDC's motion.

The FAA, however, contains a statutory exception to the final decision rule for certain categories of ordinarily non-final orders. Under the statute,

> (a) An appeal may be taken from—
> (1) an order—
> (A) refusing a stay of any action under section 3 of this title,
> (B) denying a petition under section 4 of this title to order arbitration to proceed,
> (C) denying an application under section 206 of this title to compel arbitration,
> (D) confirming or denying confirmation of an award or partial award, or
> (E) modifying, correcting, or vacating an award;
> (2) an interlocutory order granting, continuing, or modifying an injunction against an arbitration that is subject to this title;

or

(3) a final decision with respect to an arbitration that is subject to this title.

9 U.S.C. § 16.  Congress' purpose in passing the FAA was to reverse judicial enmity to arbitration as a method of dispute resolution.  See Gilmer v. Interstate/Johnson Lane Corp. 500 U.S. 20, 24 (1991).  Section 16(a) serves that end by ensuring that district court orders hostile to arbitration agreements can be immediately appealed.  See Ansari v. Qwest Commc'ns Corp., 414 F.3d 1214, 1217 (10th Cir. 2005); Sandvik AB v. Advent Int'l Corp., 220 F.3d 99, 104 (3d Cir. 2000) (noting that failing to review orders denying arbitration "could circumvent the FAA's clear purpose of enforcing binding arbitration agreements").

Had PDC brought a motion either to stay proceedings or to compel arbitration under FAA §§ 3 or 4, and had the district court then denied that motion, our jurisdiction would be clear.  Cf. Chelsea Family Pharmacy, PLLC v. Medco Health Solutions, Inc., 567 F.3d 1191, 1194 (10th Cir. 2009) (exercising appellate jurisdiction over the denial of a § 3 motion to stay litigation); Ansari, 414 F.3d at 1217-18 (finding appellate jurisdiction even where district court denied FAA § 4 petition on procedural grounds). But PDC did not so move in the district court.  Instead, it moved to dismiss the complaint outright under Rule 12, a motion only partly premised on the existence and enforceability of the arbitration agreement.  Therefore, the question for us is whether we should treat a generic motion to dismiss under Rule 12 as a motion made "under section 3" or "under section 4" of the FAA for the purposes of taking jurisdiction under § 16(a).

Whether a Court of Appeals can or should treat a motion to dismiss as a motion under the FAA for the purposes of § 16(a) is an unsettled issue nationwide, and has not been previously addressed in our circuit. See Harrison v. Nissan Motor Corp. in U.S.A., 111 F.3d 343, 348-49 (3d Cir. 1997) (noting that some courts have found appellate jurisdiction, but that the question remains open). To resolve it, we look to the text of § 16(a) and our canons of statutory construction, to how the Supreme Court has treated the statute, and to the decisions of our sister circuits.

A.    Text of FAA § 16(a)

When interpreting a term in a statute, "we turn first to the text." Johnson v. Riddle, 305 F.3d 1107, 1116-17 (10th Cir. 2002). If the words of the statute have a plain and ordinary meaning, we apply the text as written. See Jones v. Comm'r of Internal Revenue, 560 F.3d 1196, 1200 (10th Cir. 2009). We may consult a dictionary to determine the plain meaning of a term. Id. at 1200-01.We also take into account "the broader context of the statute as a whole" when ascertaining the meaning of a particular provision. In re Wise, 346 F.3d 1239, 1241 (10th Cir. 2003) (quoting Robinson v. Shell Oil Co., 519 U.S. 337, 341 (1997)). If we cannot determine the meaning of a statutory term merely by reference to the text, we may also look to traditional canons of statutory construction to inform our interpretation. See Lamb v. Thompson, 265 F.3d 1038, 1051 (10th Cir. 2001).

The term at issue in § 16(a) is the preposition "under." In order for us to find appellate jurisdiction here, we must decide that the phrases "under section 3" in

-7-

§ 16(a)(1)(A) and "under section 4" in § 16(a)(1)(B) encompass not only motions explicitly brought pursuant to those provisions, but also motions that in some manner contemplate the applicability of §§ 3 or 4 without mentioning them by name. The most on-point definition of "under" in Webster's Dictionary is "within the grouping or designation of." Webster's Third New International Dictionary 2487 (1986 ed.).[1] This definition does not necessarily settle the question. When a motion is brought under Rule 12, it is not "within the . . . designation of" either §§ 3 or 4; the notion of "designation" implies explicitness. Such a motion, however, could conceivably be "within the grouping . . . of" a §§ 3 or 4 motion if it encompasses the same arguments that an FAA motion might.

The structure of § 16(a), however, offers a more substantial clue to the intent of Congress. Section 16(a) sets out seven different otherwise non-final district court actions that may be immediately appealed: denying a § 3 motion; denying a § 4 petition; denying an application under § 206, which allows enforcement of international arbitration orders; confirming or denying an arbitration award; altering or vacating an award; granting or altering an injunction against an arbitration; and entering any other "final decision[] with respect to an arbitration." 9 U.S.C. § 16(a). That Congress chose specifically to

---

[1] Because § 16 was added to the FAA in 1988, see Pub. L. 100-702, § 1019(a), 102 Stat. 4642, 4670-71 (1988), we look to a contemporary dictionary to determine the likely intent of the Congress adopting the provision. See Perrin v. United States, 444 U.S. 37, 42 (1979) ("[U]nless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning . . . at the time Congress enacted the statute . . . .)."

enumerate the limited conditions under which a non-final order may be appealed argues against our recognizing a further category of permitted appeals, namely, appeals from the denial of motions to dismiss based in part on arbitration agreements.

Canons of construction also support the notion that "under section 3 [or section 4]" should be interpreted only to encompass motions brought explicitly pursuant to the FAA or those in which it is plainly apparent that the applicant seeks only arbitration. Because of the limited and defined nature of the jurisdiction of the federal courts, we are bound to construe statutes conferring jurisdiction narrowly.  Weber v. Mobil Oil Corp., 506 F.3d 1311, 1314 (10th Cir. 2007); see also Pritchett v. Office Depot, Inc., 420 F.3d 1090, 1094-95 (10th Cir. 2005) ("It is well-established that statutes conferring jurisdiction upon the federal courts . . . are to be narrowly construed in light of our constitutional role as limited tribunals." (citing Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108-09 (1941))).  By encompassing only those motions explicitly brought under the FAA or unmistakably invoking its remedies, rather than all motions founded at least in part on arbitration agreements, Conrad's reading of § 16(a) is clearly the narrower of the two.

Finally, two policy maxims also argue in favor of our conclusion.  First, this court has recognized that, where jurisdictional matters are concerned, we prefer clear, bright-line rules.  See McCauley v. Halliburton Energy Servs., Inc., 413 F.3d 1158, 1162 (10th Cir. 2005) (noting the preference in the context of a § 16(a) appealability analysis).  Second, there is a long-established policy preference in the federal courts disfavoring

piecemeal appeals.  See Pimentel & Sons Guitar Makers, Inc. v. Pimentel, 477 F.3d 1151, 1153 (10th Cir. 2007) (citing Gardner v. Westinghouse Broad. Co., 437 U.S. 478, 480 (1978)).  Our approach serves both of those policy interests.  The rule we adopt today is both clear and easily administrable.  If the motion falls within one of the seven categories laid out in § 16(a), or unmistakably seeks only the relief offered by one of those provisions, it may be appealed; if not, it may not.  This approach will also eliminate the necessity—as demonstrated by this case—of determining whether an interlocutory appeal may be maintained.

The administrative problems of the alternative rule are illustrated in this case, where we are asked to give controlling weight to some incidental phrase or reference otherwise buried in a motion that would not typically alert a judge that relief is being requested under §§ 3 or 4 of the FAA.  The possible connection to the FAA is even more attenuated here because the clear (almost exclusive) thrust of the motion to dismiss was to ask the court to examine the merits of the case and to dismiss it for lack of merit.  This relief is inconsistent with a request to have the arbitrator decide the case.  It is clearly inconsistent with the policy behind the FAA to ask the court to decide the merits of the case and then almost incidentally suggest that if the court does not rule in the movant's favor, then the movant would like a second bite at the apple before the arbitrator.[2]

---

[2] If a party files a motion under FAA §§ 3 or 4, that motion is denied by the court, and the denial is affirmed on interlocutory appeal, nothing prevents that party from then filing a Rule 12 motion to dismiss.  Rules 12(g) and (h) are not to the contrary.  Rule 12(g)(2)

Continued . . .

On the whole, thus, a bright-line analysis grounded in the plain text of § 16 seems the better approach to this jurisdictional issue. Therefore, based on the text and the overall structure of the statutory provision, as well as canons of construction and policy considerations, we conclude that § 16(a) permits interlocutory appeals only over those motions brought explicitly pursuant to the FAA, or motions in which it is unmistakably clear that the defendant seeks only the relief offered by the FAA.

B.      The Supreme Court's Interpretation in Arthur Andersen, L.L.P. v. Carlisle

While it does not control the outcome of the question presented here, the Supreme Court's recent decision in Arthur Andersen, L.L.P. v. Carlisle, 129 S. Ct. 1896 (2009), provides additional support for a categorical, bright-line approach to § 16(a). The issue presented in that case was whether the denial of a motion to compel a non-signatory to an arbitration agreement nevertheless to arbitrate was still brought "under section 3," so as to invoke the appellate jurisdiction granted in § 16(a).

The Court answered that question in the affirmative, and in doing so it admonished

bars a party from making "another motion under this rule" based on an argument omitted from a prior Rule 12 motion. Fed. R. Civ. P. 12(g)(2) (emphasis added). Rule 12(h)(1) points out that a "defense listed in Rule 12(b)(2)-(5)" is waived if not brought in an initial Rule 12 motion. Fed. R. Civ. P. 12(h)(1) (emphasis added). A motion made under the FAA to compel arbitration or stay litigation, however, is expressly not a motion made under Rule 12, and "[t]he prohibition in Federal Rule 12(g) against successive motions expressly covers only motions under 'this rule,' which, of course, means motions authorized by Rule 12." 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1386 (3d ed. 2004) (citing Moore v. Dunham, 240 F.2d 198, 200 (10th Cir. 1957) (holding that a motion to stay proceedings under the Soldiers' and Sailors' Civil Relief Act does not trigger the waiver provisions applied to successive Rule 12 motions)).

courts to avoid conflating the question of § 16(a) appellate jurisdiction with the underlying merits of the appeal. The Sixth Circuit had "looked through" the § 3 motion to the merits of the arguments, and held that because—in its view—Arthur Andersen could not enforce the arbitration agreement against Carlisle, § 16(a) did not confer jurisdiction to hear the appeal. But the Supreme Court held that "[j]urisdiction over the appeal . . . must be determined by focusing on the category of order appealed from, rather than upon the strength of the grounds for reversing the order." 129 S. Ct. at 1900 (internal quotation marks omitted, emphasis added). Thus, even if Arthur Andersen's argument for why it could enforce the arbitration agreement against Carlisle were utterly frivolous, the reviewing court would not be divested of jurisdiction to hear the appeal, as long as Arthur Andersen "explicitly asked for a stay pursuant to § 3." Id.; see also id. at 1901 ("[E]ven utter frivolousness of the underlying request for a § 3 stay cannot turn a denial into something other than 'an order . . . refusing a stay of any action under section 3.'") (quoting 9 U.S.C. § 16(a)(1)).

In dissent, three Justices argued that whether the party against whom enforcement of an arbitration agreement is sought is a party to the agreement should be a threshold question to the application of § 16(a), but the majority solidly rejected that approach. "Determination of whether § 3 was invoked in a denied stay request is immeasurably more simple and less factbound than the threshold determination respondents would replace it with . . . . It is more appropriate to grapple with that merits question after the court has accepted jurisdiction over the case." Arthur Andersen, 129 S. Ct. at 1901.

Rather than engage in a factually-specific inquiry into the status of the parties, the majority instructed the lower courts to look squarely and exclusively at "the category of the order appealed from" to decide whether § 16(a) applies. See id. at 1900.

While the question facing this court is different, the methodology we adopt today is consistent with the Supreme Court's admonition. PDC's preferred approach would require courts of appeals carefully to parse the district court motions and memoranda to determine, factually, whether the arguments pressed in the district court sufficiently raised the concerns of the FAA to deem the motion brought "under section 3" or "under section 4." To us, this is akin to the type of factbound threshold determination the respondents urged the Supreme Court to adopt in Arthur Andersen, and that the Court rejected. By focusing on "the category of the order appealed from," as the Arthur Andersen Court did, we avoid conflating the jurisdictional question and the merits of the appeal and reach our jurisdictional answer in a simple, streamlined process.

C.      Approaches Taken in Other Circuits

The opinions of our sister circuits to have considered the question also support the conclusion we reach today. While the other circuits have not explicitly characterized the analysis under § 16(a) as a two-step process as we do, their opinions buttress the notion that to determine whether appellate jurisdiction under § 16(a) exists, you look first to how the motion was characterized, and then to the nature of the relief sought.

The D.C. Circuit, for example, in Bombardier Corp. v. Nat'l R.R. Passenger Corp., 333 F.3d 250, 253 (D.C. Cir. 2003), focused on "the plain language of Section 16." It

concluded that the movant's Rule 12 motion "was neither a motion to compel arbitration under 9 U.S.C. § 4 nor a motion to stay arbitration under 9 U.S.C. § 3," and so no appellate jurisdiction existed under § 16(a).  Id.  In Wabtec Corp. v. Faiveley Transport Malmo AB, 525 F.3d 135, 140 (2d Cir. 2008), the Second Circuit also noted the importance of the plain language of § 16(a), and further noted that the movant's motion "focused on preventing [the plaintiff] from resolving any dispute in the courts," rather than purely seeking arbitration, and thus that no appellate jurisdiction followed.  Finally, the First Circuit in Fit Tech, Inc. v. Bally Total Fitness Holding Corp., 374 F.3d 1, 6 (1st Cir. 2004), looked more directly to the facts of the case before it to determine that the defendant "clearly [was] invoking the [arbitration] remedy, even if a stay rather than dismissal ensues."  Thus, appellate jurisdiction was appropriate.  See id.  Our approach to this issue, laid out in the next section, melds the approaches taken by the other circuits into a coherent, two-step process.

      D.     Our Analytical Approach to § 16(a)

Given the foregoing, we hold that, in order to invoke the appellate jurisdiction provided in § 16(a), the defendant in the district court must either move to compel arbitration and stay litigation explicitly under the FAA, or must make it plainly apparent that he seeks only the remedies provided for by the FAA—namely, arbitration rather than any judicial determination—in his prayer for relief.

The first, simplest, and surest way to guarantee appellate jurisdiction under § 16(a) is to caption the motion in the district court as one brought under FAA §§ 3 or 4.  See

Fed. R. Civ. P. 10(a) ("Every pleading must have a caption with the court's name, a title, a file number, and a Rule 7(a) designation.") (emphasis added). This simple rule should dispose of the vast majority of cases in this area, and those hoping to avail themselves of the immediate appeal provided for in the FAA would do well to follow it. See, e.g., Bombardier, 333 F.3d at 253 ("Under the plain language of Section 16, the district court's order denying the Rule 12(b)(6) motion to dismiss is not one of those enumerated under Section 16(a)(1) or (2), allowing for interlocutory appeal, and therefore, this court lacks jurisdiction to consider this appeal."). Failure to caption a motion to compel arbitration and stay litigation as a motion brought under the FAA—the type of failure on display in this case—dramatically reduces the chances that an appellate court will find it has jurisdiction to review the denial of such a motion.

Given our expressed preference for bright-line rules, an approach that looks exclusively to the caption of a motion may seem tempting, but it would be unworkable, for two reasons. First, we feel that to look only at the caption of a motion would violate the spirit of notice pleading embodied in our Federal Rules of Civil Procedure. See Robbins v. Oklahoma, 519 F.3d 1242, 1249 (10th Cir. 2008) ("Context matters in notice pleading.") (quoting Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008)). Second, a caption-only approach could create incentives for litigants to "game" the captions of their motions in an effort to gain an interlocutory appeal where none is warranted. Therefore, while in the vast majority of cases the caption will go most of the way toward answering the question, we feel that it is not dispositive.

If a motion denied by the district court is not explicitly styled as a motion under the FAA, or the court suspects that the motion has been mis-captioned in an attempt to take advantage of § 16(a), the court must look beyond the caption to the essential attributes of the motion itself. Cf. Pimentel, 477 F.3d at 1153 ("[I]n deciding whether a district court order 'granting' an injunction is appealable under § 1292(a)(1), we consider the substance rather than the form of the motion and caption of the order."). The goal of this inquiry is to determine whether it is plainly apparent from the four corners of the motion that the movant seeks only the relief provided for in the FAA, rather than any other judicially-provided remedy. To do so, the court should look to the relief requested in the motion. If the essence of the movant's request is that the issues presented be decided exclusively by an arbitrator and not by any court, then the denial of that motion may be appealed under § 16(a). See, e.g., Fit Tech, 374 F.3d at 6 ("[Movant] clearly argued to the district court that under the purchase agreement the accountant had sole authority to resolve all issues.") (emphasis in original).

If, on the other hand, the movant in the district court requests a judicial remedy that is inconsistent with the position that the issues involved may be decided only by the arbitrator, the movant is no longer proceeding exclusively under the FAA and has forfeited their right to interlocutory review under § 16(a). See, e.g., Wabtec, 525 F.3d at 140 ("Rather than affirmatively seek arbitration in accordance with the agreement, [movant's] motion focused on preventing [non-movant] from resolving any dispute in the courts, in accordance with the agreement's provision that disputes would be settled

-16-

'without recourse to the courts.'").

      E.      Application to PDC's Appeal

Under the test as we have articulated it, PDC's motion does not meet the criteria to support jurisdiction under § 16(a). PDC styled its motion as a Rule 12 motion to dismiss, rather than a motion under §§ 3 or 4 of the FAA to stay litigation and compel arbitration. Thus, under the first step of our analysis, it does not qualify for interlocutory appeal. As to the second step of the analysis, in the section of its motion related to the arbitration agreement, PDC asserted that "Plaintiff's Complaint should be dismissed . . . because Plaintiff agreed to arbitrate all claims relating to his employment with [PDC]." (App. at 33.) In the conclusion of its memorandum in support of the motion, PDC asked the court to "dismiss Plaintiff's complaint." (Id. at 66.) This is a request for judicial relief in the form of dismissal, rather than a request that the court refer the case to an arbitrator to decide the issues. Therefore, the essence of PDC's motion was not for relief under the FAA, and so no § 16(a) appellate jurisdiction exists over the denial of that motion.

To be sure, PDC did mention that the court might compel arbitration in one sentence of its memorandum, and did cite to one Third Circuit case addressing §§ 3 and 4 of the FAA. But these two offhand references do not serve to make it plainly apparent that the essence of the motion is a request for relief under the FAA. Therefore, we find that we do not possess jurisdiction to review the district court's denial of PDC's motion to dismiss Conrad's Complaint.

Conclusion

For the foregoing reasons, we DISMISS this appeal for lack of jurisdiction and REMAND to the district court for further proceedings.