**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

WHEELING HOSPITAL, INCORPORATED,
a West Virginia not for profit
corporation; BELMONT COMMUNITY
HOSPITAL, INCORPORATED, an Ohio
not for profit corporation,

         *Plaintiffs - Appellees,*

         and

WHEELING PEDIATRICS, LLC, an
Ohio limited liability company;
WOMEN'S HEALTH SPECIALISTS OF
WHEELING HOSPITAL, LLC, a West
Virginia limited liability company,
on behalf of themselves and all
others similarly situated; MEDICAL
PARK ANESTHESIOLOGISTS,
INCORPORATED, a West Virginia
corporation; KENNETH C. NANNERS,
M.D.; KENNETH S. ALLEN, M.D.;
WILLIAM H. WRIGHT, M.D.; JUDITH
T. ROMANO, M.D.; WAYT HEALTH
CARE PLLC, a West Virginia
professional limited liability
company, on behalf of themselves
and all others similarly situated,

         *Plaintiffs,*

No. 11-1694

v.

THE HEALTH PLAN OF THE UPPER
OHIO VALLEY, INCORPORATED, a
federally qualified and
state-certified not for profit health
maintenance organization,

*Defendant - Appellant,*

and

OHIO VALLEY HEALTH SERVICES AND
EDUCATION CORPORATION, a West
Virginia not for profit corporation;
OHIO VALLEY MEDICAL CENTER, a
West Virginia not for profit
corporation; EAST OHIO REGIONAL
HOSPITAL, an Ohio not for profit
corporation,

*Defendants.*

Appeal from the United States District Court
for the Northern District of West Virginia, at Wheeling.
Frederick P. Stamp, Jr., Senior District Judge.
(5:10-cv-00067-FPS-JES)

Argued: May 15, 2012

Decided: June 27, 2012

Before GREGORY, DUNCAN, and DIAZ, Circuit Judges.

Reversed by published opinion. Judge Duncan wrote the opinion, in which Judge Gregory and Judge Diaz joined.

**COUNSEL**

**ARGUED:** Allen M. Lopus, THORP, REED & ARM-
STRONG, LLP, Pittsburgh, Pennsylvania, for Appellant.
Mark A. Colantonio, FRANKOVITCH, ANETAKIS,
COLANTONIO & SIMON, Weirton, West Virginia, for
Appellees. ON BRIEF: Carl N. Frankovitch, Michael G.
Simon, FRANKOVITCH, ANETAKIS, COLANTONIO &
SIMON, Weirton, West Virginia; Anthony Cillo, COHEN &
GRIGSBY PC, Pittsburgh, Pennsylvania, for Appellees.

---

**OPINION**

DUNCAN, Circuit Judge:

Appellees Wheeling Hospital and Belmont Hospital (col-
lectively "the hospital plaintiffs"), along with other medical
providers, commenced this putative class action in West Vir-
ginia state court on May 19, 2010, against the Ohio Valley
Health Services and Education Corporation, Ohio Valley
Medical Center and East Ohio Regional Hospital, (collec-
tively, the "OV Health System Parties"), and appellant The
Health Plan of the Upper Ohio Valley, Inc. ("The Health
Plan"). The plaintiffs sued in order to collect amounts alleg-
edly owed to them by employee benefit plans established by
the OV Health System Parties, for which The Health Plan
acted as administrator.

After pretrial activity described in detail below, The Health
Plan moved to dismiss the claims brought against it by the
hospital plaintiffs pursuant to an arbitration agreement
between the parties. The district court denied this motion,
holding that The Health Plan had defaulted on its right to arbi-
trate. This appeal ensued. After assuring ourselves of appel-
late jurisdiction, we conclude that the district court erred in its
determination that The Health Plan defaulted on its right to

arbitrate. We therefore reverse the district court's denial of The Health Plan's motion to dismiss.

I.

Because this appeal turns on the procedural history of the case in the district court, we begin there. Counts I and II of the Complaint set forth breach of contract claims against the OV Health System Parties. Count III sets forth a separate breach of contract claim against The Health Plan premised on its alleged unconditional obligation to pay plaintiffs for the health care services provided to persons covered by the relevant employee benefit plans.

On June 18, 2010, the defendants removed the case to federal court. On June 21, 2010, the district court issued an order and notice regarding discovery and scheduling pursuant to Rules 16(b) and 26(f) of the Federal Rules of Civil Procedure. On June 23, 2010, The Health Plan filed an answer to the Complaint.

On June 25, 2010, the OV Health System Parties, but not The Health Plan, filed a motion to dismiss the claims asserted against them, or in the alternative for summary judgment. They advanced three arguments. First, they argued that the claims should be dismissed pursuant to Rule 12(b)(7) of the Federal Rules of Civil Procedure because the OVHS&E Health Benefit Plan, a purported indispensable party, had not been joined in the action. Second, the OV Health System Parties argued that they did not owe a payment obligation to plaintiffs under the contracts at issue and, as a result, the claims should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Finally, the OV Health System Parties argued that plaintiffs' claims should be dismissed for a purported failure to exhaust administrative remedies set forth in the OVHS&E Health Benefit Plan. Plaintiffs opposed the motion to dismiss.

While the motion to dismiss was pending, plaintiffs filed a motion for remand.[1] On July 12, 2010, The Health Plan filed an amended answer that asserted the affirmative defense of arbitration.

That same day, The Health Plan filed a pleading titled "Response to . . . Motion to Dismiss, or in the Alternative, Motion to Join in Result." J.A. 141-42. The Health Plan argued that "[t]o the extent this Court is inclined to grant the [OV Health System Parties' motion to dismiss]," The Health Plan "will be entitled to a dismissal of all claims against it as well." J.A. 141. If the district court concluded that the OVHS&E Health Benefit Plan was an indispensable party, The Health Plan contended, "the Court will have necessarily determined that the Court cannot accord complete relief among the existing parties to the action. As a consequence, dismissal would be appropriate and in fact required as to all defendants, including The Health Plan." *Id.* "Similarly," the motion continued,

> if the Court is inclined to grant the [OV Health System Parties' motion] on the basis that Plaintiffs failed to exhaust [ ] administrative remedies . . . the Court will have determined that plaintiffs' claim for payments cannot proceed at this time. This determination would likewise extend to the Plaintiffs' claims against the Health Plan since their claims are for these same payments. As a consequence, The Health Plan should likewise be dismissed pending Plaintiffs' exhaustion of the aforementioned administrative remedies.

*Id.* at 141-42. Notably, The Health Plan did not seek a dismissal on the merits under Rule 12(b)(6).

---

[1] On July 16, 2010, The Health Plan filed an opposition to the motion to remand. It did not make any reference to arbitration in that opposition.

On July 26, 2010, plaintiffs filed a motion to strike The Health Plan's response to the motion to dismiss, and an opposition to its alternative motion to join in result. They argued that The Health Plan's pleading was a "belated and unsupported motion to dismiss and a premature and unsupported motion for summary judgment." J.A. 177. Plaintiffs further contended that The Health Plan's motion should be denied on the merits because, even if the district court were to grant the OV Health System Parties' motion to dismiss, that grant would not preclude or limit plaintiffs' breach of contract claim against The Health Plan.

On July 30, 2010, the parties filed their Report of Planning Conference, in which they were required to consider, inter alia, alternative dispute resolution processes. The Report did not mention The Health Plan's intent to compel arbitration of any of the claims asserted against it. The Report contained proposed scheduling deadlines, including a proposed November 5, 2011 trial date. On August 2, 2010, the district court entered a scheduling order setting dates for, among other things, the close of discovery (August 1, 2011), a pretrial conference (October 17, 2011) and trial (November 1, 2011).

Also on August 2, 2010, The Health Plan filed a response to plaintiffs' motion to strike. Therein, it disputed the plaintiffs' characterization of its motion, and argued that its motion constituted a "timely response to the Ohio Valley Health System Defendants' Motion." J.A. 194.

On September 8, 2010, plaintiffs noticed the deposition of two Health Plan witnesses. On September 14, 2010, plaintiffs served discovery on The Health Plan in the form of interrogatories and requests for production. They also noticed a 30(b)(6) deposition of The Health Plan.

On December 2, 2010, the district court entered a memorandum opinion and order on outstanding motions. The district court denied the motion for remand. It granted the OV

Health System Parties' motion to dismiss under Rule 12(b)(6): "Because the plaintiffs cannot state a breach of contract action against the OV Health System Parties either directly or as third-party beneficiaries, this Court must dismiss Count I and II of the plaintiffs' complaint for failure to state a claim." J.A. 429. The district court denied the OV Health System Parties' motion to dismiss under Rule 12(b)(7), however, concluding that complete relief could be provided without joining the employee benefit plans because "[t]he plaintiffs contracted for payment in the [Hospital Service Agreements] with the Health Plan. It is The Health Plan's responsibility under the [contract] to pay the plaintiffs for any health care services provided to participants in the employee benefit plans." J.A. 430. Turning to The Health Plan's response to the OV Health System Parties' motion, the district court first denied the plaintiffs' motion to strike. It then denied The Health Plan's alternative motion to join in result for the same reason it had denied the OV Health System Parties' 12(b)(7) motion, holding that under the facts alleged, The Health Plan was contractually obliged to make payments to the plaintiffs. Thus, after the district court's ruling, The Health Plan was the only remaining defendant in the suit.

On January 10, 2011, plaintiffs filed a motion for leave to amend their complaint to add additional plaintiffs, which the district court granted. On January 27, 2011, The Health Plan filed a motion to dismiss the amended complaint with prejudice. The Health Plan's memorandum in support of this motion divides the named plaintiffs in the amended complaint into three distinct categories: (1) physician practice groups; (2) individual physicians; and (3) hospitals, i.e., Belmont Hospital and Wheeling Hospital. The Health Plan argued that it and the hospital plaintiffs had a relationship governed by Hospital Service Agreement contracts. The memorandum contains a "Background" section, which sets forth in detail the terms of those contracts, including the "Disputes and Arbitration" clause contained therein. At the conclusion of the Background section, the memorandum states, "Hospital Plaintiffs'

allegations of breach of contract by the Health Plan by non-payment is plainly encompassed by this arbitration provision . . . the Court should compel separate binding arbitrations for each Hospital Plaintiff's claims." J.A. 483. Part I.B. of the memorandum is titled "Pursuant to the Express Terms of the Contracts, Hospital Plaintiffs' Claims must be Submitted to Separate, Binding Arbitrations." J.A. 485. It discusses the Supreme Court's case law regarding the enforcement of arbitration agreements, and then argues:

> Here, to give full effect to the intentions and terms of the agreements between each Hospital Plaintiff and The Health Plan, the Hospital Plaintiffs' claims must be submitted to individual arbitration proceedings. These parties have specifically agreed to resolve their disputes in arbitration . . . [which] must be enforced by this Court. . . . This agreement must be upheld on its terms, and individual arbitrations ordered. To hold otherwise would rewrite the contracts between the parties. As this litigation violates the Hospital Plaintiffs' agreement to arbitrate all disputes related to compensation, the Complaint should be dismissed with prejudice.

J.A. 487-88. Plaintiffs opposed The Health Plan's motion to dismiss. They argued, inter alia, that The Health Plan had defaulted on any right that it may have had to compel arbitration.

On June 6, 2011, the district court denied The Health Plan's motion to dismiss. With respect to the portion of The Health Plan's motion directed at the claims of the hospital plaintiffs, the district court found that it constituted a demand for arbitration:

> The Federal Arbitration Act ("FAA") requires that a district court, upon motion by any party, "stay judicial proceedings involving issues covered by written

arbitration agreements." *Choice Hotels Intern., Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709 (4th Cir. 2001); *see also* 9 U.S.C. § 3. When a party seeks enforcement of the arbitration clause of an agreement during proceedings in a district court, a party sufficiently "invoke[s] the full spectrum of remedies under the FAA, including a stay under § 3." *Id.* at 710. Accordingly, this Court finds that The Health Plan's motion to dismiss because of the arbitration clause invokes its remedies under the FAA, and therefore constitutes a demand for arbitration.

J.A. 1534. The district court went on to find, however, that Health Plan had defaulted on its right to arbitration. After reciting the applicable standard for default of the right of arbitration, the district court concluded that the hospital plaintiffs had "met their heavy burden to show that allowing arbitration at this point in the litigation" would prejudice them. J.A. 1536-37. In support of this conclusion, it found that "The Health Plan engaged in over six months of litigation between amending its answer to include the affirmative defense of arbitration and actually demanding arbitration." *Id.* at 1537. During that time, it further found, the hospital plaintiffs "had to respond to two dispositive motions by The Health Plan on the merits, forcing the hospital plaintiffs to reveal their legal strategy in opposing those motions." *Id.* The district court observed, "The Health Plan has participated in oral argument and opposed the hospital plaintiffs' motions, arguing that this Court has proper jurisdiction over this civil action. The Health Plan opposed a motion to compel, which the parties subsequently resolved." *Id.* The district court also noted that "the plaintiffs assert by affidavit that they incurred more than $250,000 in legal fees and expenses," *id.*, but did not adopt this assertion as a finding of fact.

Based on the above findings of fact, the district court concluded as follows:

> The Health Plan utilized "the litigation machinery" in such a way to prejudice the plaintiffs if this Court dismissed the action to allow arbitration at this stage in the litigation. Because this Court finds that The Health Plan has [defaulted on] its right to arbitrate, it is not necessary for this Court to decide whether it would be unconscionable to permit The Health Plan to assert arbitration clauses in this matter. Accordingly, The Health Plan's motion for summary judgment as to the hospital plaintiffs is denied with prejudice.

*Id.* This appeal followed.

## II.

The Health Plan contends that the district court erred in holding that it had defaulted on its right to arbitrate. Before proceeding to the merits of this appeal, however, we must first assure ourselves that we possess appellate jurisdiction, which turns on whether The Health Plan properly invoked the FAA in its motion to dismiss. We first set forth the proper standard for determining our appellate jurisdiction under the FAA. We then apply that standard, concluding that we possess appellate jurisdiction over this appeal.

## A.

Federal courts are courts of limited jurisdiction, and we presume that a cause lies outside this limited jurisdiction. *Barbour v. Int'l. Union*, 640 F.3d 599, 605 (4th Cir. 2011) (en banc), *abrogated on other grounds by* 28 U.S.C. § 1446(b)(2)(B). The burden of establishing the contrary rests upon the party asserting jurisdiction. *Id.*

"Ordinarily, courts of appeals have jurisdiction only over 'final decisions' of district courts." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 627 (2009) (quoting 28 U.S.C.

§ 1291). The FAA, however, makes an exception to that finality requirement, providing that "[a]n appeal may be taken from . . . an order":

(A) refusing a stay of any action under section 3 of this title,

(B) denying a petition under section 4 of this title to order arbitration to proceed,

(C) denying an application under section 206 of this title to compel arbitration,

(D) confirming or denying confirmation of an award or partial award, or

(E) modifying, correcting or vacating an award[.]

9 U.S.C. § 16(a)(1). In *Stedor Enter's., Ltd. v. Armtex, Inc.*, 947 F.2d 727 (4th Cir. 1991), we elaborated on the meaning of § 16:

The broad purpose of section 16 was to implement Congress' deliberate determination that appeal rules should reflect a strong policy favoring arbitration. Congress sought to effectuate this policy in two ways. First, an order that favors litigation over arbitration—whether it refuses to stay the litigation in deference to arbitration; refuses to compel arbitration; denies confirmation to or modifies, corrects, or vacates an arbitral award; or grants, continues, or modifies an injunction against arbitration—is immediately appealable, even if interlocutory in nature. Thus, a party who believes that arbitration is required by an agreement between the parties need not suffer the expense and inconvenience of litigation before receiving appellate review of a district court judgment that arbitration was inappropriate.

*Id.* at 730 (internal quotation marks and citations omitted).

We have not addressed the exact issue presented here, whether we have appellate jurisdiction to review a denial of a motion to dismiss that demands arbitration without specifically invoking §§ 3 or 4. However, in *Choice Hotels Int'l., Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707 (4th Cir. 2001), we addressed a related question, i.e., whether a party had "properly invoked" § 3 of the FAA, under which a party may seek a stay of proceedings pending arbitration, even though it had styled its motion as a motion to dismiss. *Id.* at 709. We held that "[n]otwithstanding the terms of § 3, . . . dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable." *Id.* "Moreover," we added,

> a hypertechnical reading of [the defendant's] pleadings would be inconsistent with the liberal federal policy favoring arbitration agreements. [The defendant] made it clear during proceedings in the district court that it was seeking enforcement of the arbitration clause of the Agreement. This is sufficient to invoke the full spectrum of remedies under the FAA, including a stay under § 3.

*Id.* at 709-10 (internal quotation marks and citations omitted). Notably, *Choice Hotels* concerned whether dismissal was an authorized remedy under § 3, and we did not specifically frame our discussion in the terms of appellate jurisdiction, presumably because the appellee did not challenge our jurisdiction. Nevertheless, the opinion's reasoning with respect to what a defendant must do in order to invoke the full spectrum of remedies under the FAA is instructive with regard to our appellate jurisdiction.

Although we have not considered the specific question of appellate jurisdiction over a motion to dismiss that does not specifically invoke §§ 3 or 4, several other circuits have done so. In their analysis, they have adopted an approach similar to

the one we articulated in *Choice Hotels*, focusing on whether the defendant made it clear that it was seeking enforcement of the arbitration clause contained within an applicable agreement. In *Conrad v. Phone Directories Co.*, 585 F.3d 1376 (10th Cir. 2009), the Tenth Circuit adopted a two-step process for determining whether a court of appeals has appellate jurisdiction under § 16(a).

> The first, simplest, and surest way to guarantee appellate jurisdiction under § 16(a) is to caption the motion in the district court as one brought under FAA §§ 3 or 4. *See* Fed.R.Civ.P. 10(a) ("Every pleading must have a caption with the court's name, a *title*, a file number, and a Rule 7(a) designation.") (emphasis added). This simple rule should dispose of the vast majority of cases in this area, and those hoping to avail themselves of the immediate appeal provided for in the FAA would do well to follow it.

*Id.* at 1385. Although "an approach that looks exclusively to the caption of a motion may seem tempting," *Conrad* observed, "it would be unworkable" because it "would violate the spirit of notice pleading embodied in our Federal Rules of Civil Procedure" and "create incentives for litigants to 'game' the captions of their motions in an effort to gain an interlocutory appeal where none is warranted." *Id.* It therefore articulated a second step in the process of determining appellate jurisdiction:

> If a motion denied by the district court is not explicitly styled as a motion under the FAA, or the court suspects that the motion has been mis-captioned in an attempt to take advantage of § 16(a), the court must look beyond the caption to the essential attributes of the motion itself. The goal of this inquiry is to determine whether it is plainly apparent from the four corners of the motion that the movant seeks

only the relief provided for in the FAA, rather than
any other judicially-provided remedy.

*Id.* (citations omitted). The Tenth Circuit favored a focus on
"the relief requested in the motion," concluding that "[i]f the
essence of the movant's request is that the issues presented be
decided exclusively by an arbitrator and not by any court,
then the denial of that motion may be appealed under
§ 16(a)." *Id.* at 1385-86.

> If, on the other hand, the movant in the district court
> requests a judicial remedy that is inconsistent with
> the position that the issues involved may be decided
> only by the arbitrator, the movant is no longer pro-
> ceeding exclusively under the FAA and has forfeited
> their right to interlocutory review under § 16(a).

*Id.* at 1386. We find this analysis persuasive.

The second step of the *Conrad* test thus strikes a balance
between form and substance, and is in harmony with the other
circuits to have considered the issue.[2] Accordingly, when a

---

[2]Even the D.C. Circuit, which has focused on the plain language of
§ 16(a) and construed the provision narrowly, has nevertheless acknowl-
edged that it may construe a motion to dismiss more broadly in some cir-
cumstances, particularly if it were based on the FAA's requirement that
arbitration agreements be strictly enforced. *See Bombardier Corp. v. Nat'l
R.R. Passenger Corp.*, 333 F.3d 250, 254 (D.C. Cir. 2003). On the facts
in *Bombardier*, the court declined to construe the motion broadly because
it "exhibited no intent to pursue arbitration—indeed, it sought outright dis-
missal with no guarantee of future arbitration." *Id.* Similarly, the Second
Circuit dismissed for lack of appellate jurisdiction where a motion to dis-
miss neither explicitly nor implicitly petitioned the district court to compel
arbitration. *Wabtec Corp. v. Faively Transp. Malmo AB*, 525 F.3d 135,
140 (2d Cir. 2008). The First Circuit in *Fit Tech, Inc. v. Bally Total Fit-
ness Holding Corp.*, 374 F.3d 1 (1st Cir. 2004), found appellate jurisdic-
tion where the movant clearly argued that the case had to be arbitrated,
and noted that if the movant had wanted a dismissal but no decision by
the arbitrator, then it would have refused to entertain the appeal. *Id.* at 5-
6.

motion is not styled in a dispositive manner, we hold that our inquiry into appellate jurisdiction should be based on the principle articulated in *Choice Hotels*, as well as *Conrad*. In other words, we must determine whether The Health Plan made it clear within the four corners of its motion to dismiss that it was seeking enforcement of the arbitration agreement.

B.

So viewed, we conclude that The Health Plan clearly stated in its motion to dismiss that it was seeking to enforce the arbitration agreement. As already noted, The Health Plan's memorandum, which was incorporated by reference in the motion, set forth in detail the terms of the "Hospital Service Agreement" contracts between the parties, including the "Disputes and Arbitration" clause. The memorandum specifically argued that the court should compel separate binding arbitrations for each hospital plaintiff's claims pursuant to the express terms of the contracts between the parties. Moreover, The Health Plan did not request a judicial remedy that was inconsistent with the position that the issues involved may be decided only by the arbitrator. For these reasons, we are satisfied that we possess appellate jurisdiction over this appeal.

III.

Turning now to the merits, we must determine whether the Health Plan defaulted on its right to arbitration. "We review a district court's decision as to default of arbitration de novo but defer to the district court's underlying factual findings." *Forrester v. Penn Lyon Homes, Inc.*, 553 F.3d 340, 342 (4th Cir. 2009). We thus review a district court's finding of actual prejudice de novo if it is based on a legal determination, but we review it for clear error if it is based on a factual determination. *See Microstrategy Inc. v. Lauricia*, 268 F.3d 244, 252-53 (4th Cir. 2001).

"Under section 3 of the FAA, a party loses its right to a stay of court proceedings in order to arbitrate if it is 'in default in proceeding with such arbitration.'" *Forrester*, 553 F.3d at 342 (quoting 9 U.S.C. § 3). "Default in this context resembles waiver, but, due to the strong federal policy favoring arbitration, courts have limited the circumstances that can result in statutory default." *Id.*[3] "[D]elay and participation in litigation will not alone constitute default." *Id.* at 343. "But a party will default its right to arbitration if it so substantially utilize[s] the litigation machinery that to subsequently permit arbitration would prejudice the party opposing the stay." *Id.* (internal quotation marks omitted). "The heavy burden of showing default lies with the party opposing arbitration." *Id.* (internal quotation marks omitted).

"Where a party fails to demand arbitration during pretrial proceedings, and, in the meantime, engages in pretrial activity inconsistent with an intent to arbitrate, the party later opposing a motion to compel arbitration may more easily show that its position has been compromised, i.e., prejudiced." *Fraser*, 817 F.2d at 252 (internal quotation marks omitted). "But, even in cases where the party seeking arbitration has invoked the 'litigation machinery' to some degree, 'the dispositive question is whether the party objecting to arbitration has suffered *actual prejudice.*'" *Microstrategy*, 268 F.3d at 249 (quoting *Fraser*, 817 F.2d at 252); *Patten Grading & Paving, Inc. v. Skanska USA Bldg., Inc.*, 380 F.3d 200, 205 (4th Cir. 2004) (same)

In determining what constitutes actual prejudice, we have emphasized that the amount of "delay and the extent of the moving party's trial-oriented activity are material factors in

---

[3]In our prior decisions, we have sometimes used the terms "default" and "waiver" interchangeably. As we emphasized in *Forrester*, however, default is distinct from waiver. Accordingly, to achieve uniformity and prevent confusion, we have substituted the term "default" for the term "waiver," where appropriate, in our discussion of prior decisions.

assessing a plea of prejudice." *Microstrategy*, 268 F.3d at 249. (internal quotation marks omitted). We consider each factor in turn.

## A.

We first consider the amount of delay. In *Microstrategy*, we concluded that the appellant's delay of fewer than six months in seeking arbitration was relatively short, and that nothing in the record suggested that "this delay, in and of itself, caused [the appellee] to suffer actual prejudice." *Id.* at 250; *see also Patten Grading & Paving, Inc. v. Skanska USA Bldg., Inc.*, 380 F.3d 200, 205 (4th Cir. 2004) (finding no prejudice in four-month delay); *Maxum Founds., Inc. v. Salus Corp.*, 779 F.2d 974, 982 (4th Cir. 1985) (finding no prejudice in three-month delay). Accordingly, we concluded that "[a]ny delay by [the appellant] in asserting its right to arbitration, therefore, is insufficient to support a finding of [default]." *Microstrategy*, 268 F.3d at 250.

Here, too, we have found nothing in the record that supports a finding of prejudice to the hospital plaintiffs based on that ground. Indeed, during oral argument, the hospital plaintiffs appeared to recognize that a finding of prejudice could not be based on the delay in this case. Thus, the district court, to the extent it based its conclusion of prejudice on the delay, clearly erred in doing so.

## B.

"Whether [The Health Plan] [defaulted on] its right to insist on arbitration by virtue of its litigation activities is a more difficult question." *Microstrategy*, 268 F.3d at 250. We look to our precedent for guidance in this regard.

## 1.

We have held that a party suffered actual prejudice because it was forced to respond to a number of potentially damaging

motions, including a motion for partial summary judgment and three motions to dismiss. *Fraser*, 817 F.2d at 252. In *Fraser*, judgment on several of the claims which the defendant sought to arbitrate was rendered over two years before the defendant made the arbitration. *Id.* Further, the passing of two trial dates prior to the date for the hearing on the defendant's motion to compel arbitration showed that the plaintiff had to prepare repeatedly for trial rather than arbitration. *Id.*

Similarly, in *Forrester*, we found that plaintiffs had suffered actual prejudice where a defendant waited until the eve of the trial before moving to compel arbitration, and "[b]y that time [plaintiffs] had engaged in extensive pretrial preparations including multiple depositions, a motion for summary judgment, motions in limine, and submission of an array of pretrial pleadings." 553 F.3d at 343. "This use of the litigation process," we held, caused the plaintiffs actual prejudice because it required them "to expend significant time and money," permitted the defendant to defeat several of the plaintiffs' claims on summary judgment, and forced the plaintiffs to reveal their trial strategy. *Id.*

By contrast, in *Patten*, we found that no prejudice arose from the appellant's pre-trial activity, reasoning that although the district court had resolved three motions prior to the appellant's attempt to compel arbitration, none were filed by the appellant and none addressed the merits of any of the appellee's claims. 380 F.3d at 206 ("We are unwilling to include activity that the moving party did not initiate in assessing that party's default."). Moreover, we rejected the argument that prejudice arose from the discovery conducted between the parties, noting that at the time of the appellant's motion to compel arbitration, "the parties' discovery efforts were confined to the exchange of interrogatories and requests for production of documents; significantly, the parties had not noticed depositions." *Id.* "The minimal nature of the discovery conducted in this case," we concluded, "falls well within the scope of discovery we have previously found insufficient to

establish prejudice." *Id.* at 206-07. Importantly, we observed, "Further, [the appellee] fails to demonstrate that [the appellant] availed itself of discovery procedures unavailable in arbitration, or gained a strategic advantage through its discovery requests." *Id.* at 207. We concluded that the discovery had not caused prejudice "[b]ecause the written discovery conducted here was limited, the parties had not proceeded with time-consuming and expensive depositions, and [the appellee] demonstrates no resulting disadvantage." *Id.*

Applying the foregoing cases here, we must determine whether the hospital plaintiffs suffered actual prejudice as a result of the extent of The Health Plan's litigation conduct. In its analysis, the district court took into account the fact that the hospital plaintiffs had to respond to two dispositive motions by The Health Plan on the merits, forcing the hospital plaintiffs to reveal their legal strategy in opposing those motions. The district court also found it significant that The Health Plan participated in oral argument and opposed the hospital plaintiffs' motions, including their motion to remand, in which it argued that the district court had jurisdiction over this civil action. Finally, it noted that plaintiffs had asserted by affidavit that they incurred more than $250,000 in legal fees, although it did not adopt this assertion as a finding of fact. We now examine each of the district court's findings.

a.

Preliminary, we must reject the district court's reliance on The Health Plan's opposition to motions filed by the hospital plaintiffs to support a finding of prejudice. As we stated in *Patten*, we do not include activity that the moving party did not initiate in assessing that party's default. *See id.* Thus, the district court could not permissibly conclude that prejudice resulted from The Health Plan's responses to plaintiffs' motions, including The Health Plan's assertion of the district court's jurisdiction.

b.

We must likewise reject the district court's conclusion that The Health Plan's dispositive motions[4] forced the hospital plaintiffs to reveal their litigation strategy. Notably, the district court failed to explain what litigation strategy had been revealed, or otherwise provide any reasoning in support of its finding. Nor did the hospital plaintiffs elaborate on this assertion before the district court. They simply restated the conclusion, pointing to nothing in the record that supports the contention that the hospital plaintiffs were forced to reveal any significant elements of their legal strategy in responding to a 12(b)(7) motion that essentially argued that if relief were afforded to other defendants, it should also be afforded to The Health Plan.[5] By its nature, such a motion, although it is potentially dispositive, does not seek relief on the merits, and would therefore not appear to require a response from the opposing party that reveals litigation strategy. In the absence of evidence showing that The Health Plan has gained some strategic advantage as a result of the hospital plaintiffs' pleadings to date, we are constrained to conclude that the hospital plaintiffs suffered no actual prejudice on that ground.

---

[4]The district court stated that the plaintiffs have had to respond to *two* dispositive motions by the Health Plan on the merits. It did not specify those motions. Presumably, it was referring to The Health Plan's motion to join in result and to its subsequent motion to dismiss. We agree that the former may be appropriately characterized as a dispositive motion on the merits. The latter motion, however, cannot be factored into the analysis, because it was the very vehicle through which The Health Plan sought enforcement of the arbitration agreements.

[5]By contrast, in *In re Mirant*, 613 F.3d 584 (5th Cir. 2000), a case on which the hospital plaintiffs place heavy reliance, the court found that the three motions to dismiss filed by the party that subsequently sought to invoke arbitration "gave it a full preview of [the non-movant's] evidence and litigation strategy, particularly its arguments and evidence in response to the [movant's] affirmative defenses." *Id.* at 592.

c.

Nor have the hospital plaintiffs demonstrated that they suffered actual prejudice on the ground that they incurred significant expense as a result of litigation activity initiated by The Health Plan. In *Patten*, we recognized that expenses incurred in responding to the moving party's litigation activities are relevant in assessing a plea of prejudice, though we noted "that at least one circuit has concluded that incurring the legal expenses inherent in litigation is, without more, 'insufficient evidence of prejudice to justify finding a [default].'" 380 F.3d at 208 (quoting *PPG Indus., Inc. v. Webster Auto Parts, Inc.*, 128 F.3d 103, 107 (2d Cir. 1997)). We concluded that we need not resolve the issue because "closer scrutiny of" the legal expenses at issue "indicates that the amount properly attributable to [the appellant's] conduct during the delay in seeking arbitration is, in fact, much smaller." *Id.* In the $5862.56 total, the appellant had included state court filing fees, document reproduction and mailing costs, mediator fees, and costs attributable to its response to a subpoena from a nonparty. *Id.* "Such costs are sums that [the appellee] would have incurred irrespective of the timing or the fact of [the appellant's] motion to compel arbitration," we held, "and [the appellant] offers no argument to the contrary." *Id.*

The facts here are very similar to those in *Patten*, and compel the same conclusion. First, it bears note that the district court did not adopt the hospital plaintiffs' assertion regarding its expenses. Even assuming that it credited the hospital plaintiffs' assertion, however, it clearly erred in doing so. The hospital plaintiffs' affidavit failed to specify the portion of that amount spent by the hospital plaintiffs, as distinguished from the amount spent by other plaintiffs. Nor did it indicate what portion of that amount was spent litigating against The Health Plan, as distinguished from the amount that was spent litigating against the OV Health System Parties. It also made no effort to indicate what portion of the $250,000 was incurred as a result of litigation activity initiated by The Health Plan.

Notably, to the extent the hospital plaintiffs incurred expenses engaging in affirmative discovery, such expenses would not establish prejudice. *Patten*, 380 F.3d at 208. Similarly, the hospital plaintiffs cannot be prejudiced by costs that they would have incurred irrespective of the timing or the fact of The Health Plan's motion. The hospital plaintiffs assert that "[t]hese legal fees were incurred in large part by virtue of having to respond to The Health Plan's dispositive motion, by engaging in discovery with The Health Plan, including the preparation of motions to compel, and by otherwise proceeding on the merits in a case that might have been stayed if The Health Plan had promptly moved to enforce its arbitration rights." Appellees' Br. 37. This conclusory statement does little to cure the deficiencies in their affidavit. It was the plaintiffs' burden to prove the expenses they suffered as a result of The Health Plan's litigation activity. Because their unsupported conclusory assertions about those expenses are insufficient to meet that burden, we cannot weigh that factor in their favor.

d.

Finally, the crux of the hospital plaintiffs' claim of prejudice is that The Health Plan's filing of the equivalent of a motion for judgment on the pleadings was inherently prejudicial. Having already concluded that this filing did not cause a substantial delay in the litigation, that there is no proof that the hospital plaintiffs were forced to reveal their legal strategy as a result of the filing, nor any evidence that they incurred significant legal expenses as a result thereof, we must now determine whether the filing of the motion is sufficient by itself to give rise to the actual prejudice that is required by our precedent.

Although some of our sister circuits have held that the non-moving party is prejudiced when the party seeking to arbitrate "litigate[s] substantial issues on the merits," *Southeastern Stud & Components, Inc. v. Am. Eagle Design Build Studios,*

*LLC*, 588 F.3d 963, 969 (8th Cir. 2009); *see also Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 131 (2d Cir. 1997) ("The 'prejudice' that supports a finding of [default] can be 'substantive prejudice to the legal position of the party opposing arbitration, such as when the party seeking arbitration loses a motion on the merits and then attempts, in effect, to relitigate the issue by invoking arbitration" (internal quotation marks omitted)), we have never adopted that position in a binding opinion.[6]

In *Fraser*, discussed above, we found that the appellee was prejudiced in part because it "had to respond to a number of potentially damaging motions, including a motion for partial summary judgment and three motions to dismiss." 817 F.2d at 252. We noted that judgment was rendered on several of appellee's claims over two years before the appellant demanded arbitration, and that the passing of two trial dates showed that the appellee had to prepare repeatedly for trial rather than for arbitration. *Id.* Notably, we did not adopt, as we could have, a bright line rule that a party is always prejudiced by the filing of a dispositive motion. Instead, we took into account all of the above factors in determining the existence of prejudice.

Our precedent thus counsels against adopting a bright line rule that the mere filing of a dispositive motion on the merits is inherently prejudicial.[7] We agree that The Health Plan engaged in some activity inconsistent with the intent to arbitrate, including by filing a motion to join in the other defen-

---

[6]In an unpublished opinion, we cited *Distajo* for the proposition that "[t]he actual prejudice required to support a finding of [default] 'can be substantive prejudice to the legal position of the party opposing arbitration." *Hasco, Inc. v. Schuyler, Roche & Zwirner*, 1998 WL 957454 at *2 (4th Cir. June 4, 1998)

[7]As already noted, The Health Plan's motion sought to join in the OV Health System Parties' request for dismissal under Rule 12(b)(7), but it did not request relief on the merits. Thus, even were we to adopt such a bright line rule, it is doubtful whether it would be determinative here.

dants' 12(b)(7) motion, and that such activity lessened the burden on the hospital plaintiffs to show that their position has been compromised, i.e., prejudiced. But we reiterate that they have nonetheless shown no actual prejudice that resulted therefrom. Notably, The Health Plan's motion to join in result does not appear to have delayed the litigation, it did not require the hospital plaintiffs to incur significant additional expenses, and nor did it cause them to reveal any litigation strategy. Thus, although we recognize that prejudice to a party's legal position may indeed be sufficient to make the requisite showing of actual prejudice, and that the filing of a potentially dispositive motion on the merits is a salient consideration in a plea of prejudice, we are compelled to conclude, on the facts presented, that the hospital plaintiffs have failed to meet their burden of showing such prejudice.[8]

## IV.

For the foregoing reasons, the judgment of the district court is

*REVERSED*.

---

[8]We are sympathetic to the principle that the party seeking arbitration, "having learned that the district court was not receptive to its arguments, should [not] be allowed a second bite at the apple through arbitration," and that "[t]o hold otherwise would encourage litigants to delay moving to compel arbitration until they could ascertain how the case was going in federal district court." *Mirant*, 613 F.3d at 590 (quotation marks omitted). On these facts, however, we believe that the hospital plaintiffs have fallen short of demonstrating that The Health Plan attempted to "game the system." *Id.* The Health Plan plausibly asserted at argument that it asserted an affirmative defense of arbitration in its answer, but chose to wait to invoke its right to arbitrate given the complicated and uncertain posture of the litigation during its early stages, which involved multiple plaintiffs and multiple defendants, only some of whom had entered into arbitration agreements with each other. Notably, as The Health Plan also informed the court at argument, it believed that the litigation could be resolved if the OV Health System Parties were successful in their efforts to make the hospital plaintiffs whole for the amounts they claim were owed to them. We are therefore reluctant, solely on the basis of its motion to join in result, to conclude that The Health Plan engaged in gamesmanship.