**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 16-1362

JAMES DILLON,

Plaintiff - Appellee,

v.

BMO HARRIS BANK, N.A.,

Defendant – Appellant,

and

FOUR OAKS BANK & TRUST COMPANY; GENERATIONS FEDERAL CREDIT UNION; BAY CITIES BANK,

Defendants.

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro.  Catherine C. Eagles, District Judge.  (1:13−cv−00897−CCE−LPA)

Argued:  March 24, 2017                          Decided:  May 10, 2017

Before DUNCAN, KEENAN, and THACKER, Circuit Judges.

Affirmed by published opinion.  Judge Keenan wrote the opinion, in which Judge Duncan and Judge Thacker joined.

**ARGUED:** Kevin Scott Ranlett, MAYER BROWN LLP, Washington, D.C., for Appellant. Hassan A. Zavareei, TYCKO & ZAVAREEI LLP, Washington, D.C., for Appellee. **ON BRIEF:** Lucia Nale, Debra Bogo-Ernst, MAYER BROWN LLP, Chicago, Illinois; Mary K. Mandeville, ALEXANDER RICKS PLLC, Charlotte, North Carolina, for Appellant. Norman E. Siegel, Steve Six, J. Austin Moore, STUEVE SIEGEL HANSON LLP, Kansas City, Missouri; Jeffrey M. Ostrow, KOPELOWITZ OSTROW P.A., Fort Lauderdale, Florida; Darren T. Kaplan, DARREN KAPLAN LAW FIRM, P.C., New York, New York; F. Hill Allen, THARRINGTON SMITH, L.L.P., Raleigh, North Carolina; Jeffrey D. Kaliel, TYCKO & ZAVAREEI LLP, Washington, D.C., for Appellee.

BARBARA MILANO KEENAN, Circuit Judge:

In this appeal, we consider the enforceability of an arbitration agreement included in the terms of a "payday loan" obtained over the internet. Plaintiff James Dillon brought this civil action against defendant BMO Harris Bank, N.A. (BMO Harris), alleging that BMO Harris violated the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.*, when BMO Harris used its role within a network of financial institutions "to conduct and participate in the collection of unlawful payday loans."

Relying on the Federal Arbitration Act (FAA), BMO Harris sought to enforce an arbitration agreement for the loan at issue, which was entered into by Dillon and the lender, Great Plains Lending, LLC (Great Plains). The district court held that the arbitration agreement was unenforceable under this Court's opinion in *Hayes v. Delbert Services Corp.*, 811 F.3d 666 (4th Cir. 2016), and denied BMO Harris' motion to compel arbitration. BMO Harris appeals from the district court's order. Upon our review, we hold that the arbitration agreement between Dillon and Great Plains is unenforceable, and we affirm the district court's order denying BMO Harris' motion.

I.

James Dillon is a resident of North Carolina. In December 2012, Dillon applied for and received a "payday loan"[1] through the website of Great Plains, a lender wholly

---

[1] "Payday loans" are short-term, unsecured consumer loans for small amounts. *See* Consumer Fin. Prot. Bureau, *What is a Payday Loan?*, (Continued)

3

owned by the Otoe-Missouria Tribe of Indians. Although North Carolina usury law generally prohibits interest rates in excess of 16%, N.C. Gen. Stat. § 24-1.1, Great Plains has no physical presence in North Carolina and charged an interest rate of 440.18% for Dillon's loan. Dillon authorized Great Plains to deposit and withdraw funds in Dillon's bank account through the Automated Clearing House Network (ACH Network), a transaction processing system that facilitates electronic transfer of funds between financial institutions, usually on behalf of account holders.

In order to complete the loan transaction, Dillon electronically signed a contract (the Great Plains Agreement) that contained: (1) terms governing the loan (the underlying loan agreement); and (2) an agreement to submit disputes to arbitration (the arbitration agreement). The Great Plains Agreement included choice of law provisions both in the underlying loan agreement and in the arbitration agreement. These choice of law provisions required the application of Otoe-Missouria tribal law and disclaimed the application of state or federal law. For example, the Great Plains Agreement by its terms was "subject solely to the exclusive laws and jurisdiction of the Otoe-Missouria Tribe of Indians, a federally recognized Indian Tribe," and provided that "no other state or federal law or regulation shall apply to this Agreement, its enforcement or interpretation."

---

https://www.consumerfinance.gov/askcfpb/1567/what-payday-loan.html (last visited Apr. 3, 2017). These loans generally carry high interest rates, sometimes in excess of 400%. *Id.*

Similarly, the arbitration agreement within the Great Plains Agreement provided that "any dispute . . . will be resolved by arbitration in accordance with the law of the Otoe-Missouria Tribe of Indians," and instructed the arbitrator to "apply the laws of the Otoe-Missouria Tribe of Indians." For borrowers who opt out of arbitration within 60 days of receiving the loan, "any disputes . . . shall nonetheless be governed under the laws of the Otoe-Missouria Tribe of Indians and must be brought within the court system thereof."

Immediately below the arbitration agreement, another choice of law provision in the Great Plains Agreement provided that "[t]his Agreement and the Agreement to Arbitrate are governed by . . . the laws of the Otoe-Missouria Tribe," and "[n]either this Agreement nor the Lender is subject to the laws of any state of the United States." The Great Plains Agreement signature page also required that Dillon agree to the following term: "I further understand, acknowledge and agree that this loan is governed by the laws of the Otoe-Missouria Tribe of Indians and is not subject to the provisions or protections of the laws of my home state or any other state."

Dillon later filed a putative class action complaint in the district court, claiming that Great Plains and other tribal payday lenders had issued numerous unlawful loans. Instead of directly suing the tribal payday lenders, including Great Plains, for violating state usury laws, Dillon sued the financial institutions that facilitated these payday lending transactions over the ACH Network. Dillon alleged that the ACH Network was

5

an "enterprise," and that several of its members, including BMO Harris, conducted and participated in the "collection of unlawful debts" in violation of the federal RICO Act.[2]

In the district court, BMO Harris sought to compel arbitration pursuant to the Great Plains Agreement.[3] *See Dillon v. BMO Harris Bank, N.A.*, 787 F.3d 707, 711 (4th Cir. 2015). While the merits of BMO Harris' motion to compel arbitration were pending in the district court, this Court decided *Hayes v. Delbert Services Corp.*, 811 F.3d 666 (4th Cir. 2016). In *Hayes*, we reviewed a loan agreement between a consumer and Western Sky Financial, LLC (Western Sky), a payday lender organized under the laws of the Cheyenne River Sioux Tribe. *Id.* at 668. The loan agreement at issue in that case (the Western Sky Agreement) contained an arbitration clause that we held was unenforceable as being in violation of public policy. *Id.* at 675–76.

After we issued our opinion in *Hayes*, the district court evaluated the language of the Great Plains Agreement in light of the *Hayes* decision. The district court concluded that the Great Plains Agreement is "like the contract in *Hayes*" and "denies the applicability of all federal and state law." Accordingly, the district court held that the arbitration agreement was unenforceable, and denied BMO Harris' renewed motion to

---

[2] Dillon also asserted claims against other financial institutions, but the claims against BMO Harris are the only claims at issue in this appeal.

[3] The district court initially denied the motion to compel arbitration, holding that BMO Harris had failed to authenticate the purported loan agreement, and later denied BMO Harris' motion for reconsideration. *Dillon*, 787 F.3d at 711–12. We vacated the district court's order, and remanded the case with instructions to consider the merits of the motion to compel arbitration. *Id.* at 716.

compel arbitration. BMO Harris appeals from the district court's order denying the requested relief.

## II.

### A.

The FAA grants this Court jurisdiction to review a district court order denying a motion to compel arbitration. 9 U.S.C. § 16; *see also Dillon*, 787 F.3d at 714. We review de novo the enforceability of an arbitration provision, and apply a "strong federal policy in favor of enforcing arbitration agreements." *Hayes*, 811 F.3d at 671 (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217 (1985)).

Under the FAA, arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Courts therefore must enforce arbitration agreements "on an equal footing with other contracts." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal citations omitted). The FAA preserves state law contract defenses unless such defenses "rely on the uniqueness of an agreement to arbitrate" and are applied "in a fashion that disfavors arbitration." *Id.* at 341–42.

Consistent with these contract principles, the Supreme Court has recognized that arbitration agreements that operate "as a prospective waiver of a party's right to pursue statutory remedies" are not enforceable because they are in violation of public policy. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19 (1985); *see also Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2310 (2013);

7

*14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 273–74 (2009); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28 (1991). Under this "prospective waiver" doctrine, courts will not enforce an arbitration agreement if doing so would prevent a litigant from vindicating federal substantive statutory rights. *See Am. Express Co.*, 133 S. Ct. at 2310; *14 Penn Plaza*, 556 U.S. at 273–74; *Gilmer*, 500 U.S. at 28.

A foreign choice of law provision, of itself, will not trigger application of the prospective waiver doctrine. *See Mitsubishi*, 473 U.S. at 637 n.19. Instead, a court first must examine whether, as a matter of law, the "choice-of-forum and choice-of-law clauses operate[] in tandem as a prospective waiver of a party's right to pursue statutory remedies." *Id.* When there is uncertainty whether the foreign choice of law would preclude otherwise applicable federal substantive statutory remedies, the arbitrator should determine in the first instance whether the choice of law provision would deprive a party of those remedies. *See Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 540-41 (1995); *Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 371-73 (4th Cir. 2012). In such a case, the prospective waiver issue would not become ripe for final determination until the federal court is asked to enforce the arbitrator's decision. *Vimar*, 515 U.S. at 540-41; *Aggarao*, 675 F.3d at 371-73.

In *Hayes*, we applied the prospective waiver doctrine to the Western Sky Agreement governing another internet payday loan. There, we examined a choice of law provision that disclaimed the application of "any law other than the law of the Cheyenne River Sioux Tribe of Indians to this Agreement." *Id.* at 675. We observed that this language "almost surreptitiously waives a potential claimant's federal rights through the

8

guise of a choice of law clause" and "flatly and categorically renounce[s] the authority of the federal statutes." *Id.* We held that such language took the "plainly forbidden" step of prospectively waiving federal substantive rights. *Id.* We therefore concluded that the challenged choice of law provision was unenforceable as a matter of law. *Id.*

We also held that the offending choice of law provision was not severable from the rest of the arbitration agreement, because the choice of law provision went to the "essence" of the contract. *Id.* at 676. We concluded that "one of the animating purposes of the arbitration agreement was to ensure that [the lender] could engage in lending and collection practices free from the strictures of any federal law." *Id.* We further observed that in addition to the above deficiencies in the arbitration agreement, the underlying loan agreement contained a "brazen" disclaimer that "no United States state or federal law applies to this Agreement." *Id.* This additional disclaimer lent further support to our conclusion that the arbitration agreement was part of an "integrated scheme to contravene public policy." *Id.* (quoting *Graham Oil Co. v. ARCO Prods. Co.*, 43 F.3d 1244, 1249 (9th Cir. 1994)). We therefore applied the prospective waiver doctrine and held that the entire arbitration provision of the Western Sky Agreement was unenforceable. *Id.*

B.

We turn now to consider the Great Plains Agreement at issue in this appeal. BMO Harris argues that the Great Plains Agreement does not implicate the prospective waiver doctrine, because Dillon failed to show that the choice of law provision would actually deprive him of any federal remedies. According to BMO Harris, any ambiguities that may arise in application of the choice of law provision should be resolved by the

9

arbitrator in the first instance.  Thus, BMO Harris urges us to defer consideration of the prospective waiver doctrine until after the arbitrator construes the choice of law provision and decides whether any federal remedies remain available to Dillon.

In response, Dillon asserts that the prospective waiver issue is ripe for our review at this stage of the litigation.  He contends that there is no uncertainty regarding the effect of the choice of law provision, because that provision effects an unambiguous and categorical waiver of federal statutory rights.  Therefore, Dillon argues, the choice of law provision is unenforceable under our decision in *Hayes*.  We agree with Dillon's arguments.

The Great Plains Agreement at issue in this appeal contains many of the same choice of law provisions as the Western Sky Agreement that we held unenforceable in *Hayes*.  The Great Plains arbitration agreement provides:

> THIS AGREEMENT TO ARBITRATE IS MADE PURSUANT TO A TRANSACTION INVOLVING THE INDIAN COMMERCE CLAUSE OF THE CONSTITUTION OF THE UNITED STATES OF AMERICA, AND SHALL BE GOVERNED BY THE LAW OF THE OTOE-MISSOURIA TRIBE OF INDIANS.  The arbitrator will apply the laws of the Otoe-Missouria Tribe of Indians and the terms of this Agreement . . . .

Apart from the designated tribe, this language is identical to the related terms of the arbitration agreement that we reviewed in *Hayes*.  *See* 811 F.3d at 675.  Another provision that appears in both agreements is a section titled "GOVERNING LAW," which provides that "[t]his Agreement and the Agreement to Arbitrate are governed by [tribal law]" and "[n]either this Agreement nor the Lender is subject to the laws of any state of the United States."  *See id.* at 669–71.

10

We hold that the above provisions in the Great Plains Agreement are not distinguishable in substance from the related provisions in the Western Sky Agreement that we held unenforceable in *Hayes*. The arbitration agreement in this case implicitly accomplishes what the Western Sky Agreement explicitly stated, namely, that the arbitrator shall not allow for the application of any law other than tribal law. *See id.* at 670. Just as we did in *Hayes*, we interpret these terms in the arbitration agreement as an unambiguous attempt to apply tribal law *to the exclusion of federal and state law*. *See id.* at 675.

Additionally, other terms in the Great Plains Agreement evince an explicit attempt to disavow the application of federal or state law to any part of the contract or its parties. Those terms include the following statements:

> By executing this Agreement, you hereby . . . further agree that no other state or federal law or regulation shall apply to this Agreement, its enforcement or interpretation.

> Our inclusion of these disclosures does not mean that we . . . consent to application of state or federal law to us, to the loan, or this Agreement.

> Neither this Agreement nor the Lender is subject to the laws of any state of the United States.

> I further understand, acknowledge and agree that this loan is governed by the laws of the Otoe-Missouria Tribe of Indians and is not subject to the provisions or protections of the laws of my home state or any other state.

These terms throughout the underlying loan agreement further illustrate that the choice of law provision in the arbitration agreement "disavow[s] the application of all state and federal law" and "unambiguously forbids an arbitrator from even applying the applicable law." *Id.* at 668, 670; *see also* 17A Am. Jur. 2d *Contracts* § 326 (2016) ("When deciding

11

whether an agreement is ambiguous, particular words should be considered, not as if isolated from the context, but in the light of the obligation as a whole . . . ."). Because the effect of the arbitration agreement is unambiguous in the context of the whole contract, we conclude that the arbitration agreement functions as a prospective waiver of federal statutory rights and, therefore, is unenforceable as a matter of law. *See Hayes*, 811 F.3d at 676.

Our conclusion is not altered by BMO Harris' alternative request that we effectively sever the choice of law provisions from the arbitration agreement, and accept BMO Harris' concession to the application of federal substantive law in arbitration notwithstanding the unambiguous choice of tribal law in the arbitration agreement. BMO Harris argues that this concession would ensure that Dillon have access in arbitration to any federal substantive rights, thereby removing the chief policy rationale for application of the prospective waiver doctrine.

We find no merit in this argument. In essence, BMO Harris seeks to rewrite the unenforceable foreign choice of law provision in order to save the remainder of the arbitration agreement. As we discussed in *Hayes*, such a result is untenable. Unlawful portions of a contract may be severed *only* if: (1) the unlawful provision is not central or essential to the parties' agreement; and (2) the party seeking to enforce the remainder negotiated the agreement in good faith. 8 Williston on Contracts § 19:70 (4th ed. 1993 & Supp. 2010); Restatement (Second) of Contracts § 184 (1981). As we observed regarding the nearly identical provisions at issue in *Hayes*, "the offending provisions go to the core of the arbitration agreement." 811 F.3d at 676. Great Plains purposefully

12

drafted the choice of law provisions in the arbitration agreement to avoid the application of state and federal consumer protection laws. *See id.* at 675–76. Because these choice of law provisions were essential to the purpose of the arbitration agreement, BMO Harris' consent to application of federal law would defeat the purpose of the arbitration agreement in its entirety. *See* 8 Williston on Contracts § 19:70; Restatement (Second) of Contracts § 184.

Additionally, when a party uses its superior bargaining power to extract a promise that offends public policy, courts generally opt not to redraft an agreement to enforce another promise in that contract. Restatement (Second) of Contracts § 184 cmt. b. In the present case, Great Plains obtained the terms in the arbitration agreement through its "dominant bargaining power" in a calculated attempt to avoid the application of state and federal law. *See id.* Because Great Plains did not negotiate these terms in good faith, we decline to give effect to this "integrated scheme to contravene public policy." *Hayes*, 811 F.3d at 676 (quoting *Graham Oil Co.*, 43 F.3d at 1249); *see also* Restatement (Second) of Contracts § 184 cmt. b. Accordingly, we hold that the entire arbitration agreement is unenforceable.

## III.

In summary, we conclude that the Great Plains Agreement contains unenforceable choice of law provisions, which are not severable from the broader arbitration agreement

and render the entire arbitration agreement unenforceable.  Accordingly, we affirm the district court's order denying BMO Harris' renewed motion to compel arbitration.[4]

*AFFIRMED*

---

[4] In this interlocutory appeal, we need not consider BMO Harris' arguments that Dillon's federal claims should fail on their merits.  The district court will have an opportunity to decide those issues in the first instance.

14